**Joseph LOWE, Jr., Petitioner-Appellant,**

v.

**Joseph H. HOPPER, Warden, Georgia State Prison, Respondent-Appellee.**

**No. 74–1014.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1974.

John J. Sullivan, Savannah, Ga., for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., David L. G. King, Jr., Asst. Atty. Gen., John E. Ballard, Deputy Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

PER CURIAM:

This is an appeal from denial of the writ of habeas corpus to a Georgia state prisoner convicted of murdering his wife and arson in burning the family home with her body inside. The issue is whether a highly incriminating letter written by petitioner and introduced at the merits trial was the subject of an unconstitutional search or seizure.

Motion to suppress was denied at the merits trial following an evidentiary hearing. In the appeal from conviction the Georgia Supreme Court ruled on the search and seizure issue with respect to the manner in which the letter came into the possession of a law enforcement officer, and held there had been no violation of the Fourth Amendment.[1] The federal habeas judge reached the same conclusion. That result is supported by evidence that the letter, in an envelope addressed in petitioner's handwriting to his wife, and other personal papers of petitioner were validly turned over to the officer by a member of petitioner's family for safekeeping. The Georgia Supreme Court did not, however, address the aspect of whether, once the officer had possession of the letter, he violated the Fourth Amendment by extracting it from among the papers turned over to him for safekeeping, opening it, reading it, and thereby discovering its incriminating nature.

██ The theory of the state is that the officer's action was justified under the cases permitting an inventory of a prisoner's property in police custody for security or storage. The federal habeas judge accepted that contention.[2] The only reference at trial to the inventory question had been an affirmative answer by the officer to a single question of whether he made an inventory of the pa-

pers turned over to him. No testimony on this subject was developed at the state habeas hearing. We have examined the testimony at the federal evidentiary hearing. The officer testified that the papers were in a money bag with a zipper on it, that in the presence of members of the family (inferentially, when the bag was turned over to him) he opened the bag, and at that time he "knew what was in it" although he did not then examine all of the contents. At what one may infer was a later time, and in the presence of another police officer, he conducted what he described as the inventory. He acknowledged that at that time he was an investigating officer looking for clues in the arson case, and he stated that he opened the envelope "to see what was in it." He referred in general terms to his desire to protect himself from any claim that he had stolen something from a package not sealed and locked. He did not explicitly deny an intent to seek fruits of a crime.

██ ▪ We are unable to find in the record any evidence of when or where the alleged inventory was made and on what occasion. The District Judge noted that an officer taking custody of items for safekeeping would be entitled to take steps to protect himself against a later claim that a sum of money had been in the papers and was missing. We agree, but relevant to the question of whether that was what this particular officer was doing are such matters as the length of time since the property came into his possession, whether he had left the items unprotected during that time, whether other means were available to protect himself, whether a record was made of the contents of the bag, etc. We do not know whether the letter was sealed or unsealed, whether there was a police policy of making an inventory, and whether any record was made of the

---

1. Lowe v. State, 230 Ga. 134, 195 S.E.2d 919 (1973).

2. The only reference by the Supreme Court of Georgia to the inventory question is the

statement: "The items which he took and inventoried were in plain view in the automobile on the floorboard." This does not constitute a finding that the inventory was in compliance with the Fourth Amendment.

items inventoried. The other officer said to be present did not testify.

We conclude that further evidence is required before a correct determination can be made of whether the Fourth Amendment was violated. The decision of the District Court is vacated and the cause remanded for further evidentiary hearing and the entry of a fresh decree.