**UNITED STATES**

v.

**Airman First Class Robert B. FISHER,
FR 005–62–7923 United States
Air Force.**

**ACM S25868.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 24 Sept. 1982.

Decided 14 Oct. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Brenda J. Hollis.

Before KASTL, RAICHLE, and SNYDER, Appellate Military Judges.

## DECISION

SNYDER, Judge:

This case involves issues of nonproduction of witnesses requested by the defense and improper argument of trial counsel. Finding no prejudice to the accused, we affirm.

Contrary to his pleas, the accused was convicted by special court-martial with enlisted members of wrongfully possessing and using marihuana and false swearing, in violation of Article 134, U.C.M.J., 10 U.S.C. § 934.[1] His sentence extends to a bad conduct discharge, confinement at hard labor for three months, forfeiture of $367.00 per month for three months, and reduction to airman basic.

### I

Two of the specifications charged alleged the use of marihuana during parties on 17 October 1981 and 15 January 1982. Prior to trial, the defense requested that a number of witnesses be made available to testify; among them were an Airman L and a Mr. S.[2]

Airman L was supposedly present at the 15 January 1982 party and would testify that he did not observe the accused use marihuana during the party. At the time of trial, Airman L was serving confinement as the result of his own conviction by court-martial for drug involvement.

Mr. S, who had been a member of the Air Force at the time of the events in question, would testify essentially the same as L,

---

1. The accused was acquitted of two other specifications of using marihuana, and of obstructing justice. The convening authority disapproved the findings of wrongfully possessing paraphernalia.

2. Trial defense counsel did not submit a written request pursuant to Manual for Courts-Martial, 1969 (Rev.), para. 115c. However, trial counsel treated the oral request as a proper request.

except that S was also present at the 17 October 1981 party. S would also testify that one of the Government's witnesses had a poor reputation for truth and veracity. Additionally, it was averred that S had used marihuana with the accused on previous occasions, but had not used marihuana with the accused, or observed the accused use marihuana since January 1981.[3]

 Trial counsel conceded the materiality of the proffered testimony, but averred that the witnesses' production would be improper because they would assert their respective rights against self-incrimination during their cross-examination. After hearing argument, the military judge ruled that since the witnesses would assert their right against self-incrimination as it related to their own actions at the two parties in question, he would grant a motion to strike their direct testimony. Consequently, he denied the defense's motion for production of the two witnesses.

To resolve this issue, we assume *arguendo* that the military judge abused his discretion in refusing to order the production of the requested witnesses. However, that does not complete our analysis.

The failure to produce a material witness requires our testing the record for prejudice. *United States v. Bennett,* 12 M.J. 463 (C.M.A.1982); *see United States v. Roberts,* 10 M.J. 308 (C.M.A.1981). In order to find an absence of prejudice, we must be convinced beyond a reasonable doubt that the proffered testimony would not have tipped the scales in the accused's balance. *United States v. Richardson,* 15 M.J. 41 (C.M.A. 1983); *United States v. Hampton,* 7 M.J. 284 (C.M.A.1979); *United States v. Lucas,* 5 M.J. 167, 168 (C.M.A.1978). Applying that standard, we believe the absence of prejudice is apparent from the content of the proffered testimony and the Government's key witness.

L was expected to testify that Leger, one of the Government's witnesses, had a bad reputation for truth and veracity and that he would not believe him under oath. The accused was acquitted of the specification to which Leger testified. Thus, the accused could not have been prejudiced by the absence of L's expected testimony on that matter.

Both L and S were expected to testify that while present at the parties on 17 October 1981 and 15 January 1982, they did not observe the accused use marihuana. While this expected testimony is material in a collateral sense, it is not essential, *for it does not negate the Government's case. United States v. Phillips,* 15 M.J. 671 (A.F. C.M.R.1983), *pet. denied,* 16 M.J. 149 (C.M. A.1983) (requested witness's testimony material only in collateral sense because, although witness would deny transferring marihuana to the accused, the witness could not testify as to whether the accused had transferred marihuana to the informant). The fact that L and S did not personally observe the accused use marihuana at the parties does not negate evidence that the accused did, in fact, use marihuana.

As the military judge commented, and trial defense counsel properly conceded: "I'm sure you could probably bring in half the United States, if not all the United States to testify along those lines." The same reasoning applies to S's expected testimony that he had not used marihuana with or observed the accused use marihuana since January 1981.

A key factor in the accused's conviction is the Government's key witness, Sergeant N. In addition to testifying regarding the 15 January 1982 party, Sergeant N was the Government's only witness regarding the accused's possession and use of marihuana on divers occasions during November 1981. Thus, it is obvious that the fact finders considered her a credible witness. We also note that she was not an accomplice to the offenses on which she testified.

---

**3.** When interrogated concerning the allegations of drug abuse, the accused provided a sworn statement to the effect that he had not used marihuana since January 1981. If he used marihuana on the occasions charged, the sworn statement was obviously false; that was the gravamen of the false swearing charge.

We are convinced beyond a reasonable doubt that the testimony of L and S that they did not *observe* the accused use marihuana on 17 October 1981 and 15 January 1982, and S's testimony that he had not observed the accused use marihuana since January 1981, would not have negated the testimony of Sergeant N. Simply put, L and S do *not* exonerate the accused by their proffered testimony—they simply could offer that they were unenlightened as to whether or not such illegal use of marihuana occurred.

## II

■ The accused also complains that he was prejudiced by improper argument of trial counsel prior to findings. This assignment of error arises from the following portions of trial counsel's argument:

> TC: ... [IDC] suggested that I haven't produced the urine. Number one, these crimes were committed a long time ago. How would urine taken recently when he was caught after January 29th apply—
>
> CDC:[4] Just a minute.
>
> TC: —to a crime a long time ago.
>
> CDC: Captain [G], I'd like to make an objection. There's absolutely no evidence at all before this court when that urine was taken. None.

> \* \* \* \* \* \*

> TC ... You gentlemen know about Article 31. You can bet I interviewed these people and everyone of those who are involved in this thing have a right to remain silent.... Not everybody is as willing to testify as these witnesses [the witnesses who testified].

Prior to trial counsel's closing rebuttal argument where he made the comments above, civilian counsel made the following comments:

> And you know that if that urine supported or if there was any indication that Fisher's urine had any ingredient of THC in it, you can rest assured that Captain G would have presented it to you and you can draw the inference from the fact that

it isn't here that the urine sample is favorable.

> \* \* \* \* \* \*

> ... [T]here were a lot of people there [the 15 Jan 82 party]. You can see from the photographs. Lots of people. None of them are here to testify in corroboration of Beth [N] and/or [B]. Once again I would point out Captain [G], if they would have helped him any, he would have had them here.

Initially, as regards the comment relating to the urine test, the military judge promptly gave a curative instruction to the members, which, in our judgment, removed any possibility of prejudice. Additionally, his instruction was tailored specifically to trial counsel's comments. *See United States v. Horn*, 9 M.J. 429 (C.M.A.1980).

In cases of this nature, the basic test is whether the comments amount to an impermissible effort to testify or invite the members to base their findings on matters outside the record, or whether they constitute mere advocacy. *United States v. Tackett*, 16 U.S.C.M.A. 226, 36 C.M.R. 382 (1966); *see United States v. Anderson*, 12 U.S.C.M.A. 223, 30 C.M.R. 223 (1961). If the former, such comments are purely improper and they must be tested for prejudice. *United States v. Tackett, supra*. If the latter, then there is no error. *United States v. Anderson, supra*.

In addition to being convinced that the members viewed trial counsel's comments as no more than advocacy, we are also convinced that trial defense counsel invited trial counsel's response. We begin by restating basic law: Matters which are ordinarily not subject to comment may become items of fair comment as a result of opposing counsel's arguments. As the Court stated in *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252, 260 (1956):

> If [defense counsel] seek to make capital out of asserted failures on the part of the prosecution, they must be prepared to be met by an explanation for the omission.

4. Civilian defense counsel.

There are numerous authorities to the effect that a prosecutor's reply to arguments of defense may become proper, even though, had the argument not been made, the subject of the reply would have been objectionable.

On the instant facts, trial defense counsel clearly precipitated trial counsel's remarks. Although there was evidence that a urine sample was taken, there was no evidence whatsoever that the results were known to any Government representative. Moreover, the sample was taken long after the offenses were alleged to have occurred. The inference that trial defense counsel urged was hardly subtle: The Government was suppressing evidence favorable to the accused. The same is applicable to his comment relating to the Government's failure to call other persons who may have been at the parties.

Accordingly, we hold trial counsel's comments constituted allowable advocacy and that they were clearly invited by defense counsel's argument. *United States v. Doctor, supra;*[5] *accord United States v. Walker,* 42 C.M.R. 973 (A.F.C.M.R.), *pet. denied,* 42 C.M.R. 356 (C.M.A.1970); *United States v. Rugguero,* 1 M.J. 1089 (N.M.C.M.R.), *pet. denied,* 3 M.J. 117 (C.M.A.1977).

### III

▮ The accused also complains that the trial counsel made improper reference to Air Force policy during his argument on sentence. The comment was as follows: "You are the people that are going to have to enforce the Air Force drug policy and that's the deterrence I'm talking about."

The word "policy" has no magical quality requiring reversal. It is fairly apparent that trial counsel was emphasizing the portion of his argument dealing with deterrence. He gave no specifics of any particular policy. *United States v. Woodyard,* 16 M.J. 715 (A.F.C.M.R.1983) and cases cited therein; *cf. United States v. Allen,* 20 U.S.C.M.A. 317, 43 C.M.R. 157 (1971). That the Air Force has a drug policy is general knowledge.

We hold that the military judge's detailed curative instruction specifically tailored to trial counsel's argument, which was given prior to instructions on sentence, served to cure any prejudice which may have emanated from the remark. *United States v. Grady,* 15 M.J. 275 (C.M.A.1983).

### IV

Before turning our attention to the final assignment of error, we feel some general comments on argument of counsel are in order. The number of decisions dealing with improper argument of counsel are far too numerous to cite. It is really unfortunate that so much of our appellate time has been expended on such an easily avoidable issue. Whatever may be the logic or wisdom of the precedents,[6] the fact of the matter is that they exist and must be comprehended.

▮ Trial counsel must be disciplined and avoid responses based more on emotion than reason. The proper response to improper argument of defense counsel is a timely objection and, if necessary, an Article 39(a), 10 U.S.C. § 839 session. For example, the issue in this case could have been avoided by an objection, just as trial counsel did successfully when defense counsel made an improper comment on reasonable doubt. Likewise, defense counsel also has a professional obligation to avoid improper argument. In a sense, defense counsel's obligation is larger because a case will not be reversed because of defense counsel's improper comment on the Government's case.

---

5. *United States v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956), is also the precedent for the principle that a failure by defense counsel to object to improper argument normally constitutes waiver of the issue. We believe it is to that premise which the language of *United States v. Knickerbocker,* 2 M.J. 128 (C.M.A. 1977), n. 4, refers.

6. Considering the education, temperament, and discipline of court members, the premise that argument inflames their passions appears questionable. This is an issue on which the Court of Military Appeals perhaps will consider taking another approach.

Fairness dictates that the shield not be used as a sword.

## V

 We turn now to the accused's final assignment of error: That the military judge abused his discretion by giving what is now referred to as the *Warren* instruction, *United States v. Warren*, 13 M.J. 278 (C.M.A.1982), which instructs the members that they may consider the fact that the accused willfully lied on the witness stand in evaluating his rehabilitation potential. The basis of the assignment of error is that the instruction was given over trial defense counsel's objection.

We find no abuse of discretion. Chief Judge Everett's comment that the military judge should be hesitant about giving the instruction against the wishes of the defense may be a caution sign, but not a no entry sign. The military judge must make the determination in light of *all* of the evidence of the case. *United States v. Warren, supra,* note 9. This case is directly on point with the example in *Warren's* note 9 advising the giving of the instruction even in the absence of argument.

The accused had been convicted of false swearing after having testified in his own defense. There are not too many situations which would be more appropriate for the instruction. Additionally, the record is clear that the instruction was given to ensure that the accused was not prejudiced. We also note that the sentence was less than the authorized maximum. *See United States v. Boyd,* 17 M.J. 562 (A.F.C.M.R. 1983).

We have considered the other assignment of error and resolved it adversely to the accused.

Finding no prejudice to the substantive rights of the accused, the findings of guilty and the sentence are

AFFIRMED.

KASTL, Senior Judge, concurs, RAICHLE, Judge, absent.